IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LINDA S. CORLEY, Individually, and as Representative of the Estate of Darryl Corley, Deceased, ) ) ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO. 13-00108-CB-M |
| BOLTECH MANNINGS, INC., ) ) ) ) | |
| Defendant. ) | |

## OPINION and ORDER

This matter is before the Court on a motion for summary judgment filed by the defendant, Boltech Mannings, Inc. (Doc. 30.) Plaintiff has filed a response to the motion (Doc. 45), and Defendant has filed a reply (Doc. 41). After due consideration of the issues raised and the relevant facts in light of the applicable law, the Court finds that the motion is due to be granted.[1]

**Facts**

This action arises from the tragic deaths of two men, Charles Corley and Kenneth Boyer, during a fishing trip off the coast of Alabama on August 27, 2011. Both were employees of Boltech Mannings, Inc. (Boltech), an industrial service

---

[1] Plaintiff has also filed a motion (Doc. 41) to strike portions of the affidavit of Kimberly Boyer, as well as portions of Boyer's deposition testimony. The Court has not considered the disputed portions of the testimony and, therefore, deems the motion to strike to be **moot.**

provider located in Theodore, Alabama. Jacob Shenesy, another Boltech employee who was on the fishing trip, survived.

Boyer was Boltech's plant operations manager. Corley, who had worked at Boltech since 2002,[2] was lead heat treatment technician.  His job often required him to work for days, weeks, or months at a time out of town.  Before Boyer became plant operations manager, he and Corley would travel to job sites together.  Although they did not normally socialize off the job, Corley's wife described the two as "compatible," noting that they often drove together to jobs and were in close quarters.  According to Mrs. Corley, the two men had the same nickname for each other, "Brother Man."  As operations manager, Boyer had control over Corley's work assignments.  This meant Boyer could assign jobs that were easier or harder, jobs that involved more travel or less travel, or jobs that involved more hours or fewer hours.  Boyer also had the authority to recommend termination.

On Saturday morning, August 27, Boyer called Corley and said he needed Corley to go out with him and check out Boyer's boat, which Boyer had just gotten out of the shop. Corley's wife heard part of the conversation between the two men on speaker phone.  Corley initially said no, but Boyer "just kept on." (Corley Dep. 53.)  Corley explained that he was taking his mom out for her birthday, but Boyer just "still [kept] saying . . . I need you to go because I – I just –you know I can't do it by myself." (*Id.*)  The conversation continued after Mrs. Corley left the room.  A few minutes later, Corley told his wife that he was going with Boyer and that they might fish a little but would be back in two or three hours.  (*Id.*)

---

[2] At that time the company was Mannings.  Several years later Mannings and Boltech merged to become Boltech Mannings.

2

According to Corley's wife, Corley did not want to go out with Boyer for several reasons. First, he had just gotten back from a job in Chattanooga, Tennessee and was exhausted.[3] Second, he was planning to take his mother out to lunch or dinner that day for her birthday, which was the following day. Third, Corley had recently undergone a terrifying ordeal involving the water and did not like to go offshore.[4] Finally, Corley had gone out with Boyer in his boat a couple of months earlier, but the boat had mechanical difficulties and they had to return to shore. Mrs. Corley believed that Boyer needed Corley's help to launch the boat because Boyer had a bad ankle.

Boyer had also invited Jacob Shenesy to go along on the fishing trip. Boyer was Shenesy's boss, too, but Shenesy socialized with Boyer outside of work. Boyer called Shenesy on August 26 and asked if he wanted to go fishing the next day. Shenesy was eager to go. On Saturday, Shenesy drove to Corley's house then the two drove to Boyer's house together.

Boyer had hitched the boat to his company-owned truck, and the three headed to Dauphin Island. On the way, Boyer stopped to put gas in the truck, which he purchased using the company-credit card. Boltech provided Boyer with a company truck, a fuel credit card, an expense credit card, and a cell phone. They launched the boat at Dauphin Island then fished for a while near the mouth of

---

[3] Plaintiff claims that Corley did not want to go because he had pneumonia, but as Defendant points out the evidence of pneumonia came from autopsy results. If Corley was sick with pneumonia (which could have occurred due to time spent in the water after the accident), he did not know it.
[4] While he was attempting to pass a water submersion test that would allow him to work on offshore oil rigs, Corley's blood pressure sky-rocketed and 911 was called.

Mobile Bay at a rig known as The Ox. Boyer, who had no experience boating offshore, decided to take the boat out into the Gulf. As they passed Sand Island, south of Dauphin Island, the seas became choppy.

Next they tied up to a rig three to five miles offshore where they fished for about 30 minutes. When Boyer went into the cabin and saw that the boat was taking on water, the three decided to head back.[5] They untied the boat and managed to get the engine started, but then it stalled and was almost immediately hit by a large wave. In less than a minute, the boat was sunk. All three survived initially but were thrown into the water. Corley was separated from the other two. His body was found the next day. After surviving the night, Boyer drowned. Shenesy was rescued by a Good Samaritan. The Coast Guard conducted an investigation and concluded that "during the installation of a new fuel tank, the subfloor was cut, at which point the vessel lost watertight integrity, which inevitably led to the vessel sinking." (Coast Guard Rept., Pl.'s Ex. E.)

As a result of these events, Linda Corley, individually and as representative of the estate of Darryl Corley, filed suit against Boltech in the Circuit Court of Mobile County. Boltech removed the action to this Court based on diversity jurisdiction.[6] The Complaint alleges causes of action under General Maritime Law because "Boyer was acting as an agent or respondeat for his employer, Boltech Mannings, Inc." (Count One) and because "[a]t all relevant times, the vessel in question was under the exclusive control of Boltech Mannings, Inc., by and through its agent/supervisor,

---

[5] The boat had no radio and no emergency beacon.
[6] The notice of removal establishes that Plaintiff is a citizen of Alabama, Boltech is a citizen of Pennsylvania, and that the amount in controversy greater than $75,000.

4

Boyer" Count Two). In addition, the Complaint asserts a claim under the Savings to Suitors Clause, 28 U.S.C. § 1331(1) (Count Three), a claim for negligence under General Maritime Law (Count Four), and a claim under the Death on the High Seas Act, 46 U.S.. § 303, et seq. (Count Five). Each count "adopts and realleges" the preceding paragraphs and counts.

**Legal Analysis**

*Jurisdiction*

In each count of her Complaint, Plaintiff "demands judgment . . . under General Maritime Law." Because general maritime law does not provide an independent basis for federal jurisdiction, *Romero v. Int'l Terminal Operating Co.*, 35 U.S. 354, 368 (1959), Defendant has invoked this Court's removal jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441 based on diversity of citizenship. Jurisdiction is proper in this case because there is complete diversity between the parties and the amount in controversy exceeds the $75,000 jurisdictional minimum. *See* 28 U.S.C. § 1332(a)(1) (district courts have original jurisdiction where amount in controversy "exceeds . . . $75,000, exclusive of interest and costs, and is between . . citizens of different States").

*Summary Judgment Standard*

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,*

929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "However, we draw these inferences only "'to the extent supportable by the record.'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007) (emphasis omitted)). Furthermore, "[a] dispute over a fact will only preclude summary judgment if the dispute "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

### *Issues Presented*

All of Plaintiff's claims hinge on a theory of vicarious liability. Plaintiff asserts that Boltech is liable for Darryl Corley's death because Kenneth Boyer was, at all relevant times, "acting as agent or respondeat for his employer [Boltech]." Boltech has moved for summary judgment, pointing out Plaintiff's inability to satisfy

the requirements for agency under Alabama law. In response, Plaintiff argues that Alabama law does not apply because she is proceeding under general maritime law[7] and the Death on High Seas Act (DOSHA), 46 U.S.C. § 303. Plaintiff points to evidence that, she contends, raises a genuine issue of material fact under federal agency principles. No matter which agency law applies, Plaintiff has failed to adduce facts from which a factfinder could conclude that Boyer was acting as Boltech's agent during the events that resulted in Corley's death.

### *Alabama Law*

The principle of respondeat superior allows a party injured in tort to recover from the tortfeasor's employer if "the act complained of was done, either by agent or servant, while acting within the line and scope of employment. . ., even though [the employer] did not authorize or ratify such acts or even expressly forbade them." *Prior v. Brown & Root US, Inc.* 674 So.2d 45, 48 (Ala. 1995) (quoting *Autrey v. Blue Cross & Blue Shield of Alabama*, 481 So. 2d 345, 347-48 (Ala. 1985)). "An act is within an employee's scope of employment if the act is done as part of the duties the employee was hired to perform or if the act confers a benefit on his employer." *Hulbert v. State Farm Mut. Auto. Ins. Co.,* 723 So. 2d 22, 23 (Ala. 1998). Likewise, it is within the scope of employment if it is done in furtherance of his employment. *Id.*

---

[7] Plaintiff's Complaint is somewhat confusing in this regard. Count Three sets out a claim under the saving-to-suitors clause, 28 U.S.C. § 1331(1) and seeks relief under General Maritime law. This would appear to be contradictory. The saving-to-suitor clause, which was part of the Judiciary Act of 1789, preserves the right of a plaintiff who possesses an in personam maritime claim to elect, instead, to bring his claim as a *state common law* action. *Powell v. Offshore Nav., Inc.* 644 F.2d 1063, 1066 (5th Cir. Unit A 1981). Consequently, a saving-to-suitors claim is a one that does *not* seek relief under general maritime or admiralty claim.

Conduct that is undertaken for purely personal motives or personal gratification does not fall within the scope of employment. *Id.*

Darryl Corley was killed on a weekend fishing trip. Although Boyer, who arranged the trip, was his supervisor, nothing about the trip was job-related. It did not occur during working hours. There is no evidence that the trip was related to, sanctioned by, or for the benefit of Boltech. Nor is there any evidence that it was part of, related to, or furthered Boyer's employment in any way.[8] In fact, Plaintiff does not rely on principles of agency, vicarious liability, or respondeat superior law at all. Instead, Plaintiff argues that "whether or not Corley's death occurred in the line and scope of his employment must be analyzed under a scenario where an employee is injured while engaging in social or recreational activities, which are almost always governed by workers compensation law." (Pl.'s Brf. 23.) No citation is provided for this novel assertion that workers compensation law provides the framework for determining an employer's liability for the tortious conduct of its employee.

Even if workers compensation law were applicable, Plaintiff's claim would fail. Plaintiff cites one case, *Board of Managers of the City of Birmingham Ret. and Relief Sys. v. Elliot*, 532 So.2d 1019 (Ala. Civ. App. 1988), which held that a fireman was entitled to workers compensation for an injury incurred while playing

---

[8] The only connection between the fishing trip and Boltech, other than the fact that the participants were employees, was Boyer's use of his company-owned truck, and even Plaintiff does not argue that this is sufficient . Boyer used the truck to carry himself, his companions, and the boat to the launch at Dauphin Island. Boyer also purchased fuel for the truck using a company credit card. But this evidence alone does not create a reasonable inference that Boyer was acting within the scope of his employment.

8

basketball while on duty at the fire station. Plaintiff does not rely on any holding in *Elliot* but merely cites it for the court's reliance on a section of a treatise, A. Larson, *The Law of Workmen's Compensation* § 22 (1985), regarding an employer's liability for injuries sustained during recreational activities. One of the circumstances in which liability may be imposed is "[w]hen . . . [t]he employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment." *Id.* (emphasis added). ," Plaintiff argues that Boltech (the employer) is liable because Boyer (a Boltech employee) "expressly or impliedly[ ] compelled Corley to go fishing." (Pl.'s Br. 23.) The fallacy in this argument is that it still requires proof that the Boyer was acting on behalf of Boltech. Thus, the argument comes full circle, and, ironically, Plaintiff's alternative theory of vicarious liability requires proof of vicarious liability.

### *Maritime Law/Federal Common Law*

Plaintiff argues that Boltech is liable under federal common law even if Boyer was acting outside the scope of his employer. As Plaintiff points out, "[f]ederal maritime law embraces the principles of agency." *Naviera Neptuno S.A. v. All Int'l Freight Forwarders, Inc.*, 709 F.2d 663, 665 (11th Cir. 1983). Federal courts have looked to the Restatement (Second) of Agency to help define the contours of agency under federal common law. *See, e.g.*, *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 542 (1999). To support her claim that Boyer was acting as Boltech's agent, Plaintiff relies on the Restatement (Second) of Agency § 219(2) (1958), which states:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>     (a) the master intended the conduct or the consequences, or
>     (b) the master was negligent or reckless, or

9

> (c) the conduct violated a non-delegable duty of the master, or
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, *or he was aided in accomplishing the tort by the existence of the agency relation.*

Pointing to the highlighted portion of subsection (2)(d), Plaintiff argues that Boltech is vicariously liable, even though he was acting outside the scope of his employment, because "Boyer used his authority as plant manager to compel [Corley] to go fishing against his will which led to his death. (Pl.'s Br. 19.)

For several reasons, the Court finds that § 219(2)(d) does not apply. First, in its most recent version, the Restatement (Third) of Agency (2006) specifically abandoned the "aided in accomplishing" theory expressed in § 219(2)(d) of the Restatement (Second).

> This Restatement does not include "aided in accomplishing" as a distinct basis for an employer's (or principal's) vicarious liability. The purposes likely intended to be met by the "aided in accomplishing" basis are satisfied by a more fully elaborated treatment of apparent authority and by the duty of reasonable care that a principal owes to third parties with whom it interacts through employees and other agents.

Restatement (Third) of Agency § 7.08 cmt b.[9] In fact, the authors declined to address "an employer's vicarious liability for an employee's tortious conduct against

---

[9] The current version focuses instead on the concept of "apparent authority." "A principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purported on behalf of the principal when actions taken by the agent with apparent authority constitute the tort. . ." Id. § 7.08. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id. § 2.03. Plaintiff, of course, does not

10

a fellow employee," leaving that task to the Restatement (Third) of Employment Law, which was in preparation at the time the Restatement (Third) of Agency was published.[10] *Id.* § 7.08, cmt. a.

Second, there must be some limitation to the "aided in accomplishing" theory; otherwise the rule that the principle is not liable for torts committed outside the scope of employment is swallowed by the exception. As the notes accompanying the most recent draft of the Restatement (Third) of Employment Law point out, the "aided in accomplishing" theory renders the distinction between acts done in the scope of employment (for which the employer is always liable) and acts done outside the scope of employment (for which the employer is not liable except in limited situations) essentially meaningless. Restatement (Third) of Agency, § 4.03 Reptr.'s Notes (Tentative Draft No. 6, March 30, 2013). "[A]lmost all torts resulting from the employment relationship are 'aided' by the existence of that relationship, regardless of the tortfeasor's independent course of conduct and motivation for committing the torts." *Id.* If the theory still applies, it applies only to intentional torts. This interpretation is supported by the illustrations provided in the Restatement (Second). "Clause (d) includes primarily situations in which the principal's liability is based upon conduct which is within the apparent authority of a servant, as where one purports to speak for his employer in defaming another or interfering with another's business." Restatement (Second) of Agency § 219 cmt. e.

---

rely on apparent authority, and the evidence would not support such a finding if he did. There is no evidence that Boltech did anything to suggest that Boyer had authority to compel Corley to go fishing on his time off.
    [10] The Restatement (Third) of Employment Law has not yet been adopted.

Other examples include "a telegraph operator [who] sends false messages" or "the manager of a store [who] is enabled to cheat a customer because of his position." *Id.*

Third, the case law applying § 219(2)(d) has no application here. Plaintiff relies on three cases to support her theory that Boyer's position as supervisor amounted to "misuse of delegated authority" sufficient to create an issue of fact under the "aided by agency" theory--*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *Walton v. Johnson & Johnson Serv., Inc.*, 347 F.3d 1272 (11th Cir. 2003) and *LaRouche v. Denny's, Inc.*, 62 F.Supp.2d 1366 (S.D. Fla.). *Walton* and *LaRouche* rely extensively on *Ellerth* and its companion case, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). In *Faragher* and *Ellerth,* the Supreme Court used § 219(2)(d) as a "starting point" for determining whether an employer can be held vicariously liable for a sexually hostile work environment created by its employees. It did not intend "to make a pronouncement of agency law in general or to transplant § 219(2)(d) into Title VII." *Faragher*, 524 U.S. at 803 n. 3. Instead, the Court's aim was "to adapt agency concepts to the practical objectives of Title VII." *Id.* The Court held that "an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807. In reaching this conclusion, the Court recognized that "[s]ection 219(2)(d) concerns vicarious liability for *intentional torts* committed by an employee when the employee uses apparent authority . . . , or when the employee was aided in accomplishing the tort by the existence of the agency relationship." *Ellerth*, 524 U.S. at 759 (emphasis added). Not only is *Faragher/Ellerth* limited to hostile work environment cases, its

principles are not transferrable to this case because the holding is limited to intentional torts. [11]

**Conclusion**

For the reasons set forth above, the Defendant's motion for summary judgment is hereby **GRANTED**.

**DONE** this the 28th day of April, 2014.

                                                **s/***Charles R. Butler, Jr.*
                                                **Senior United States District Judge**

---

[11] *Walton* was a hostile work environment/sexual harassment case, similar to *Faragher/Ellerth*. *LaRouche* involved claims against a restaurant for intentional discrimination in public accommodations based on its manager's refusal to serve the plaintiffs on account of their race.

13